**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SEYED AMIN SAM MOTAGHEDI,** *et al.*, | **1:19-cv-01466-LJO-SKO** |
| **Plaintiffs,** | |
| **v.** | **ORDER RE DEFENDANTS' MOTION TO DISMISS** |
| **MICHAEL R. POMPEO,** *et al.*, | **(ECF No. 29)** |
| **Defendants.** | |

## I. <u>INTRODUCTION</u>

On October 15, 2019, Plaintiffs filed a complaint alleging that Defendants withheld adjudications of case-by-case waivers of Presidential Proclamation 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats ("PP 9645"). *See* ECF No. 1 ¶ 1. Plaintiffs raise claims under the Administrative Procedure Act ("APA"), as well as claims for mandamus relief, deprivation of procedural due process, and Equal Protection under the Fifth Amendment. *See generally* ECF No. 1.

On October 25, 2019, Plaintiffs filed a motion for a preliminary injunction. *See* ECF No. 10. The Court denied Plaintiffs' preliminary injunction motion on January 7, 2020. *See* ECF No. 44. On December 16, 2019, Defendants filed a motion to dismiss and the Declaration of Chloe Dybdahl in support of their motion to dismiss ("Dybdahl Declaration").[1] *See* ECF No. 29. Plaintiffs filed an

---

[1] Although the Dybdahl Declaration is not part of the pleadings, the Court may consider matters outside

opposition to the motion to dismiss on January 10, 2020. *See* ECF No. 42. Defendants filed their reply on January 17, 2020. *See* ECF No. 45. On January 24, 2020, Plaintiffs filed a notice of supplemental authority in support of their opposition to Defendants' motion to dismiss. *See* ECF No. 49.

The Court has reviewed the parties' filings and has determined the motion to dismiss is suitable for decision based on the papers under Local Rule 230(g). For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## II. <u>BACKGROUND</u>

Plaintiffs are United States citizens and Lawful Permanent Residents ("Petitioner Plaintiffs") and their Iranian national relatives or fiancées applying for visas ("Beneficiary Plaintiffs").[2] *See* ECF No. 1. ¶ 3. Plaintiffs allege they have fulfilled all requirements to obtain family-based or fiancé-based visas. *See id.* ¶ 5. Their visas have been refused pursuant to PP 9645. *See id.*

PP 9645 prohibits the entry of all immigrants and certain categories of non-immigrants for nationals of Iran, Libya, North Korea, Syria, Venezuela, and Yemen, but provides a mechanism by which case-by-case waivers from the ban can be granted. *See id.* ¶ 6; PP 9645 § 2(b). PP 9645 provides that "Iran regularly fails to cooperate with the United States Government in identifying security risks, fails to satisfy at least one key risk criterion, is the source of significant terrorist threats, and fails to receive its nationals subject to final orders of removal from the United States. The Department of State has also designated Iran as a state sponsor of terrorism." PP 9645 § 2(b)(i).

---

the pleadings on a motion to dismiss, "such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Coble v. DeRosia*, 823 F. Supp. 2d 1048, 1050 (E.D. Cal. 2011) (quoting *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988)). Defendants contend they include the Dybdahl Declaration to show "consular officers continue to adjudicate thousands of waiver applications around the world, which include the remaining waiver applications in this case." ECF No. 29 at 5.

[2] Eleven Plaintiffs have been voluntarily dismissed from the lawsuit on December 18, 2019; December 20, 2019; and January 8, 2020. *See* ECF Nos. 28, 30–32, 40. On January 1, 2020, Plaintiffs filed a notice that Plaintiff P.A. died in Tehran, Iran, on December 20, 2019. *See* ECF No. 33. The circumstances of P.A's death are not clear to the Court.

PP 9645 provides that "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited if such foreign nationals demonstrate that waivers would be appropriate . . . ." PP 9645 § 3(c). PP 9645 requires the Secretary of State and the Secretary of Homeland Security to "coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." *Id.* This guidance includes standards, policies, and procedures for "determining whether the entry of a foreign national would not pose a threat to the national security or public safety of the United States," "addressing and managing the risks of making such a determination in light of the inadequacies in information sharing, identity management, and other potential dangers posed by the nationals of individual countries subject to" PP 9645, and "assessing whether the United States has access, at the time of the waiver determination, to sufficient information about the foreign national to determine whether entry would satisfy" the national security requirement. *Id.* §§ 3(c)(ii).

PP 9645 further provides that a "waiver may be granted only if a foreign national demonstrates to the consular officer's or CBP official's satisfaction that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." PP 9645 § 3(c)(i). If an applicant is determined to be eligible for a visa, then the consular officer automatically considers the applicant for a waiver under PP 9645's three criteria. *See* February 22, 2018, Van Hollen Letter,[3] at 4 (stating each

---

[3] As the Van Hollen letters are referenced throughout the Complaint, the Court may appropriately include them in its analysis on a motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting court may "consider certain materials, [including] documents incorporated by reference into a complaint . . . without converting the motion to dismiss into a motion for summary judgment . . . . Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Both parties agree to the inclusion of the Van Hollen letters in the motion to dismiss

applicant refused a visa under PP 9645 "must be considered for a waiver"); *see also* February 22, 2019, Van Hollen Letter, at 12 ("An applicant will be refused pursuant to the Proclamation under section 212(f) of the [INA] while their application undergoes administrative processing for a determination on the national security and public safety waiver criterion. However, applicants whose visa applications have been refused for administrative processing will receive a further adjudication—either an issuance or another refusal—upon completion of administrative processing.").

The first waiver criterion is met when an applicant demonstrates "an unusual situation exists that compels immediate travel by the applicant . . . ." ECF No. 42 at 21 n.15. The second criterion is met when an applicant demonstrates "delaying visa issuance and the associated travel plans until after visa restrictions . . . are lifted would defeat the purpose of travel." *Id.*

Plaintiffs are individuals for whom consular officers have proposed a waiver, or whose eligibility for a waiver is being reviewed. *See* ECF No. 42 at 7. Plaintiffs contend that a group within the Department of State, known as the "PP 9645 Brain Trust," has implemented a policy and procedure stripping consular officers of the discretion granted to them by PP 9645. ECF No. 1 ¶¶ 10–15. Under this policy, Plaintiffs allege consular officers have been forced to seek the concurrence of the Visa Office and consular managers before granting any PP 9645 waiver. *Id.* ¶¶ 10–13, 97.

Plaintiffs allege that PP 9645 does not provide for consular manager's concurrence in waiver adjudications. *See id.* ¶¶ 11–12; *see generally* PP 9645 § 3(c). Plaintiffs argue that Defendants' standards, policies, and procedures "designating the authority and discretion to approve case-by-case waivers to non-consular officers, including consular managers, visa chiefs, consular section chiefs, consular management, the Visa Office, and even independent contractors with the firm Quality Support, Inc." are arbitrary and capricious that violate § 706(2)(A) and (D) of the APA. *See* ECF No. 1 ¶¶ 1–2, 8, 10–12.

---

analysis. *See* ECF No. 29 at 8 n.1; ECF No. 42 at 11 n.6.

Specifically, Plaintiffs allege Defendants "have unlawfully crafted a waiver adjudication scheme that, in its application, leads to the ongoing withholding of and/or untimely and unfair processing of case-by-case waivers for Beneficiary Plaintiffs, as well as the case-by-case waivers of all visa applicants similarly situated." *See id.* ¶ 13. Plaintiffs also quote one December 14, 2017, e-mail from Joel Nantais, a State Department Passport and Visa Examiner, which states: "Please be clear that the goal of this effort is not to create timely processing of waivers for any applicant who is ineligible under the proclamation." *Id.* ¶ 132. Plaintiffs argue that this demonstrates "Defendants' pattern and policy of unreasonable delay in dealing with waiver adjudication, as well as actions that are arbitrary and capricious." *Id.* ¶¶ 10–14.

According to a State Department report on the implementation of PP 9645, approximately 17,000 cases were undergoing national security and public safety reviews as part of the waiver consideration process as of early July 2019. *See* ECF No. 29 at 14. For the time period December 8, 2017, to October 31, 2018, 5,978 visa applications from individuals from Iran were undergoing administrative processing for a determination on national security and public safety waiver criterion.[4] *See* February 22, 2019, Van Hollen Letter, at 12.

On September 24, 2019, Edward Ramotowski, Deputy Assistant Secretary for the State Department's Bureau of Consular Affairs, testified that "[w]e anticipate that a majority of pre-July 2019 waiver cases pending with the Department, most of which require some degree of manual review, should be completed by the end of 2019 or soon thereafter." ECF No. 1 ¶¶ 145, 170. Plaintiffs allege:

> As recently as July 28, 2019, Defendants, through their U.S. Embassy in Kuala Lumpur,
> Malaysia, boasted in an email that "[Defendant] Department of State began implementing

---

[4] *But see* September 9, 2019, Declaration of Joel Nantais ¶¶ 14, 22–23, 49, Ex. A to Pls.' Opp'n to Defs.' Mot. to Dismiss ("The Visa Office has previously estimated of the number of PP 9645-subject applications that are pending a response from interagency partners on screening and vetting to evaluate a waiver, but we cannot run a search to develop reliable data at this time because as discussed in paragraphs 22-23, VOIS [Visa Office Information Service] and other consular systems [do] not, however, contain fields expressly designed for PP 9645 reporting purposes. Likewise . . . we cannot extract the exact number of visa applicants who were denied a waiver for failure to demonstrate undue hardship or national interest."). The Court need not weigh the credibility of the parties' evidence at this stage.

a procedure for PP 9645 cases that includes enhanced automated front-end (pre-interview) screening to determine whether any additional review is required related to determine whether the applicant has satisfied the national security and public safety waiver criterion," and that, "[t]his new automated system, which is now fully operational, should significantly increase the speed and efficiency of the vetting process for both current and future waiver cases while maintaining all security standards."

Defendant DOS's new "enhanced automated front-end (pre-interview) screening" is only being used for "current and future waiver cases," which is not inclusive of waiver considerations for Plaintiffs in this action, or more than 12,000 visa applicants[5] who are similarly situated, because they are old waiver cases, and stuck in what Defendants misleadingly refer to as "administrative processing."

*Id.* ¶¶ 117–18.

Plaintiffs allege that "[a]fter Defendants' early-July 2019 implementation of the automated vetting system, [the numbers of immigrant visa issuances] improved, but not as to visa applicants whose interviews occurred prior to early-July 2019." *Id.* ¶ 103. Plaintiffs have waited an average of 563 days for their waivers to be adjudicated.[6] *See* ECF No. 42 at 7. Plaintiffs allege they "suffer irreparable harm (by indefinitely denying them access to their families and unnecessarily burdening them with extraordinary expenses)." *See* ECF No. 1 ¶ 163.

Plaintiffs highlight their fear of the escalating threat of war and active conflict between the United States and Iran. *See* ECF No. 1 ¶ 129. Plaintiffs allege that on May 8, 2018, President Trump announced that the United States would withdraw from the Iran nuclear deal. *See id.* In August and November 2018, the United States implemented sanctions against Iran. *See id.* On April 8, 2019, the President designated the IRGC[7] as a Foreign Terrorist Organization. *See id.* On May 5, 2019, National Security Advisor John Bolton issued a statement referring to impending Iranian attacks and announced that a United States aircraft carrier was en route to the region. *See id.* On May 8, 2019, Iran announced it

---

[5] This figure has increased to 17,000 in both parties' motion to dismiss filings. *See* ECF No. 29 at 14; ECF No. 42 at 23 n.18.

[6] As of the date Plaintiffs filed their opposition to Defendants' motion to dismiss on January 10, 2020.

[7] While Plaintiffs fail to define this term, the Court believes it means the "Iran Revolutionary Guard Corps." Plaintiffs are instructed to clarify this in their amended complaint, if any.

would increase uranium production. *See id.* On May 10, 2019, the United States sent "additional military hardware, including a warship, to the Middle East." *Id.* On May 12, 2019, four oil tankers were attacked near the Strait of Hormuz; the United States accused Iran. *See id.*

Plaintiffs further allege that on June 17, 2019, Iran announced that it would breach uranium enrichment levels under the 2015 deal in ten days. *See id.* On June 20, 2019, Iran shot down a United States drone it says was in its airspace; the United States provided evidence it was over international waters. *See id.* The same day, President Trump tweeted "Iran made a very big mistake!" *See id.* Plaintiffs allege that President Trump then "approve[d] strikes 'on a handful of Iranian targets' but call[ed] them off at the last minute." *See id.* On June 24, 2019, President Trump announced new sanctions, and told reporters that he did not need congressional consent for an initial strike on Iran. *See id.* On September 14, 2019, Defendant Secretary Pompeo "blame[d] Iran for armed drone attacks on Saudi Arabia's massive Abqaiq oil processing facility, even though Yemen's Houthi rebels took responsibility, and sources suggest support for the attack originated in Iraq, not Iran." *Id.* Plaintiffs allege that on October 11, 2019, "the Pentagon announce[d] an additional 1,800 troops [to] be sent to Saudi Arabia, bringing the total number deployed within [the] last month to 3,000 troops" "[f]ollowing two missiles hitting an Iranian oil tanker near the Saudi port of Jeddah." *Id.*

### III. <u>STANDARD OF DECISION</u>

**A.** <u>**Rule 12(b)(1)**</u>[8]

Dismissal is appropriate under Rule 12(b)(1) when a district court lacks subject matter jurisdiction over the claim. When a defendant brings a Rule 12(b)(1) motion, the plaintiff has the burden

---

[8] Defendants bring a motion to dismiss under Rule 12(b)(6). However, much of Defendants' arguments concern jurisdiction. *See, e.g.*, ECF No. 45 at 1 ("Consideration of the adjudicated waiver applications is proof that there is no abdication of consular officer responsibility, such that Plaintiffs cannot establish jurisdiction under the immigration statutes, the APA, or the Constitution."). Motions to dismiss for lack of subject matter jurisdiction are properly raised under Rule 12(b)(1). Accordingly, this Court will analyze Defendants' motion under both Rule 12(b)(1) and Rule 12(b)(6).

of establishing subject matter jurisdiction. *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) ("Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.").

A challenge to subject matter jurisdiction may be facial or factual. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendants' jurisdictional attacks appear to be facial, as they are legal arguments that do not turn on any facts offered by Defendants. Therefore, the Court accepts as true the allegations in the Complaint. *See Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

**B.    Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at

556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions... amount[ing] to nothing more than a 'formulaic recitation of the elements'... are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint ... must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint...must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. **DISCUSSION**

The APA requires agencies to conclude matters presented to it within a reasonable time. *See* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"). Under the APA, courts may "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). The APA does not apply, however, if a statute precludes judicial review or "agency action is committed to agency discretion by law." *Id.* §§ 701(a)(1)–(2). Section 706(1) "empowers a court only to compel an agency action 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original) (internal citations omitted).

Plaintiffs argue that PP 9645 requires Defendants to adjudicate waiver considerations, but Defendants have failed to do so within a reasonable time. Plaintiffs also argue that Defendants do not have discretion to refuse to process, withhold decisions, or unreasonably delay Plaintiffs' waiver

consideration pursuant to PP 9645. Plaintiffs assert that Defendants have failed to act within a reasonable time because they failed to adjudicate Beneficiary Plaintiffs' visa waivers within 180 days.[9] Defendants raise the same or similar arguments in their motion to dismiss as they have previously argued in their opposition to Plaintiffs' application for expedited discovery and opposition to Plaintiffs' preliminary injunction motion. The Court addresses each in turn.

**A.    Private Enforceable Rights**

Defendants once again assert that PP 9645 does not create any privately enforceable rights because PP 9645 expressly indicates that it "is not intended to, and does not, create any right or benefit . . . ." ECF No. 29 at 6, 8–9, 14 (citing Procl. § 9(c), 82 Fed. Reg. at 45168)). Moreover, Defendants argue that private parties may not privately enforce compliance with a Presidential Proclamation or executive order. *See id.*

As this Court has previously held, an "executive order is privately enforceable only if it is issued pursuant to a statutory mandate or delegation of congressional authority." *See Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995). Accordingly, since PP 9645 is subject to judicial review because PP 9645 was issued pursuant to INA § 212(f), 8 U.S.C. § 1182, *see Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018), the Court again rejects Defendants' argument that PP 9645 is not privately enforceable. *See* ECF No. 20 at 6–7; ECF No. 44 at 11.

**B.    Agency Discretion**

Defendants argue that the APA does not permit review of waiver determinations because the APA does not apply to agency action committed to agency discretion by law. *See* ECF No. 29 at 13–14. Defendants aver that PP 9645 provides no right for an individual to receive "a decision on waiver application within any set period of time." ECF No. 29 at 14.

---

[9] Plaintiffs do not provide any justification for this deadline.

10

Plaintiffs do not appear to challenge the grant or denial of waivers. Rather, they appear to challenge Defendants' alleged policies that delay waiver adjudications. *See generally* ECF Nos. 1, 10, 11, 44; *see also Nine Iraqi Allies*, 168 F. Supp. 3d at 290–91 ("[w]hen the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all."). In other words, Plaintiffs appear to challenge the pre-waiver *implementation* of PP 9645, which falls outside the doctrine of consular nonreviewability. *See* ECF No. 20 at 5–6; ECF No. 44 at 11–12; *see also Nine Iraqi Allies*, 168 F. Supp. at 290 ("the doctrine of consular nonreviewability is not triggered until a consular officer has made a *decision* with respect to a particular visa application") (emphasis in original).

Plaintiffs' APA claims are additionally premised upon the theory that Defendants are not following their own guidance regarding waiver considerations and are instead usurping consular officers' authority to grant waivers. *See Darchini v. Pompeo*, No. 8:19-cv-01417-JVS-DFM, 2019 WL 7195621, at *4 (C.D. Cal. Dec. 3, 2019); *Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1019 (N.D. Cal. 2019) ("The gravamen of the complaint is that the government has flouted its own guidelines and statements about case-by-case determinations of waiver applications in favor of a policy of blanket denials . . . . Those issues do not require review of an individual consular officer's decision."). Thus, to the extent Plaintiffs' claims challenge large-scale patterns of agency behavior, the doctrine of consular nonreviewability does not apply for this additional reason.

As several courts have recognized, in upholding the constitutionality of PP 9645, the Supreme Court relied in part on the waiver program, through which "consular officers *are* to consider in each admissibility determination whether the alien demonstrates that (1) denying entry would cause undue hardship; (2) entry would not pose a threat to public safety; and (3) entry would be in the interest of the United States." *See Najafi*, No. 4:19-cv-05782-KAW, 2019 WL 6612222, at *5 (emphasis added) (quoting *Trump v. Hawaii*, 138 S. Ct. at 2422); *Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1013 (N.D. Cal. 2019) ("The allowance for waivers in the Proclamation was an important reason why the five-

justice majority upheld it as serving a legitimate national security interest."). Indeed, the State Department's February 2018 response to Senator Chris Van Hollen provides that every applicant who is subject to PP 9645 who is otherwise eligible for a visa "*must* be considered for a waiver." February 22, 2018, Van Hollen Letter, at 2 (emphasis added). In its February 2019 response to Senator Van Hollen, the State Department provided: "If an applicant does not fall into an exception category, but is otherwise eligible for a visa, a consular officer will automatically consider the applicant for a waiver based upon the three-part test set forth in PP 9645. The applicant need not prepare any separate application for a waiver." February 22, 2019, Van Hollen Letter, at 1.

Defendants argue "even if the delegation of discretion were not expressly committed to another branch, governing law offers no standard to guide a reviewing court to impose a timing requirement on this exercise of discretion." ECF No. 29 at 10. As discussed above, however, Defendants do not have the discretion to refuse to process or withhold decisions. The absence of any standard upon which to frame a timing requirement is not unusual in APA unreasonable delay cases. As discussed below, the Ninth Circuit's framework for evaluating such claims takes this into account.

**C.** **PP 9645 Does Not Preclude Judicial Review**

The APA does not apply if a statute precludes judicial review. 5 U.S.C. §§ 701(a)(1)–(2). Defendants contend that the APA limitation precluding judicial review applies here because PP 9645 operates to explicitly commit the waiver adjudication process to the agency's discretion. *See* ECF No. 29 at 14. The premise of this argument has been rejected above. Defendants point to no other provision of law that operates to preclude judicial review under the APA.

**D.** **Consular Nonreviewability**

Once again, Defendants argue that the consular nonreviewability doctrine extends to not only the decision to issue or refuse a visa, but also the timing of that decision. *See* ECF No. 29 at 15–16. The Court refers the parties to its January 7, 2020, order for a more fulsome analysis of consular nonreviewability. *See* ECF No. 44 at 13–15. The Court only addresses Defendants' newest arguments.

Defendants cite *Shiu Ying Wong Woo v. Leavitt*, No. 2:07-cv-2019, 2008 WL 2774448, *2 (E.D. Cal. June 27, 2008) (quoting *Capistrano v. Dep't of State*, 267 F. App'x 593, 594–95 (9th Cir. 2008) and *Aggarwal v. Sec'y of State*, 951 F. Supp. 642, 649 (S.D. Tex. 1996). These cases do not alter the Court's previous reasoning. In *Shiu Ying Wong Woo*, the embassy denied a plaintiff's visa application because of his marijuana use. *See Shiu Ying Wong Woo*, No. 2:07-cv-2019, 2008 WL 2774448, at *1. *Shiu Ying Wong Woo* is distinguishable because it resulted in a final decision denying the plaintiff's visa application. No. 2:07-cv-2019, 2008 WL 2774448, at *1. Here, however, no final decision on the remaining Plaintiffs' visa applications have been made. Plaintiffs are automatically considered for waivers. *See* February 22, 2019, Van Hollen Letter, at 12 ("An applicant will be refused pursuant to the Proclamation under section 212(f) of the [INA] while their application undergoes administrative processing for a determination on the national security and public safety waiver criterion. However, applicants whose visa applications have been refused for administrative processing will receive a further adjudication—either an issuance or another refusal—upon completion of administrative processing"); *see id.* at 1 ("If an applicant does not fall into an exception category, but is otherwise eligible for a visa, a consular officer will automatically consider the applicant for a waiver based upon the three-part test set forth in PP 9645. The applicant need not prepare any separate application for a waiver.").

*Capistrano v. Department of State*, 267 F. App'x 593, 594–95 (9th Cir. 2008) and *Aggarwal v. Secretary of State*, 951 F. Supp. 642, 649 (S.D. Tex. 1996) are similarly inapplicable because both cases involve denials of the plaintiffs' visa applications, and nothing in the courts' decisions demonstrate that those decisions lacked any finality. Therefore, as the Court has previously held, the doctrine of consular nonreviewability does not apply.

**E.**    **Unreasonable Delay**

At the outset, this Court recognizes there have been several cases around the country analyzing the length of delay plaintiffs have awaited waiver adjudications under PP 9645. Those district courts have generally compared PP 9645 cases with those seeking immigration relief *within* the United States.

Given the significant hardships at stake, including prolonged harsh family separation and the "escalation[] and the rhetoric" between the United States and Iran (ECF No. 1 ¶¶ 129, 163), this Court is not convinced that those cases involving delays in adjustment of status or investor visa petitions where plaintiffs are within the United States or not undergoing the same pressures, are direct comparisons to what is happening in this case.

Courts analyze the factors from *Telecommunications Research & Action Center("TRAC") v. FCC* to determine when defendants' conduct constitutes an unreasonable delay under § 706(1). *See* 750 F.2d 70 (D.C. Cir. 1984). The *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.

*TRAC*, 750 F.2d at 79–80 (internal citations and quotation marks omitted).

Courts within the Central District of California and Northern District of California analyzing PP 9645 cases have held that Plaintiffs could not likely prevail on their unreasonable delay claims where plaintiffs waited between 430[10] to 501 days on average for waiver adjudications. *See Darchini*, No. 8:19-cv-01417-JVS-DFM, 2019 WL 6841991, *2, *5 (C.D. Cal. Sept. 24, 2019); *Najafi*, No. 4:19-cv-05782-KAW, 2019 WL 6612222, *3; *Yavari v. Pompeo*, No. 2:19-cv-02524-SVW-JC, 2019 WL 6720995, *8 (C.D. Cal. Oct. 10, 2019).

---

[10] The State Department received a *Yavari* plaintiff's waiver application on August 6, 2018, and the *Yavari* court's order was dated October 10, 2019. *See Yavari*, No. 2:19-cv-02524-SVW-JC, 2019 WL 6720995, at *8.

One district court from the District of Columbia granted the defendants' motion to dismiss, holding plaintiffs failed to state a claim where a two-year delay in adjudicating a plaintiff's visa application was "not unreasonable under the circumstances." *Didban v. Pompeo*, No. 19-cv-881-CRC, 2020 WL 224517, *5 (D.D.C. Jan. 15, 2020). Another district court from the District of Columbia analyzing PP 9645 also held that an eight-month delay in adjudicating waivers was not *per se* unreasonable. *See Moody v. Pompeo*, No. 1:19-cv-01151-TSC, *5 (D.D.C. May 13, 2019) ("because Plaintiffs have not demonstrated that the [eight-month] delay is *per se* unreasonable, or unreasonable given the circumstances attendant to this case, Plaintiffs have not established a likelihood of success on the merits; they have established only that their claims are plausible.").

In contrast, one district court from the District of Columbia analyzing PP 9645 on a motion to dismiss recently held that despite the lack of a "strict timeframe set by the Proclamation or agency guidance for processing waivers," "the general APA reasonableness standard governs the timeframe and that, while the ultimate decision of whether to grant a visa is discretionary, the agency has no discretion whether to consider waiver eligibility." *See Moghaddam v. Pompeo*, No. 19-668-CKK, 2020 WL 364839, *7–8 (D.D.C. Jan. 22, 2020). The *Moghaddam* court further held "[a]t the motion to dismiss stage, this Court need not consider whether the agency delay alleged here is unreasonable. Undergoing such a fact-specific inquiry at this stage would be premature." *Id.* at *7 (citing *M.J.L. v. McAleenan*, No. A-19-CV-00477-LY, 2019 WL 6039971, at *6 (W.D. Tex. Nov. 13, 2019) (finding that "at the motion to dismiss stage and before discovery has been completed," it would be "premature to address these [*TRAC*] factors").

The Court nevertheless analyzes the *TRAC* factors and finds that Plaintiffs have stated a plausible claim for unreasonable delay under the APA.

### 1.    **Rule of Reason**

"The reasonableness determination is a fact-specific inquiry," and the "length of delay alone is not dispositive." *Mugomoke v. Curda*, No. 2:10-cv-02166-KJM-DAD, 2012 WL 113800, at *8 (E.D.

15

Cal. Jan. 13, 2012). Therefore, courts "look[] to the source of the delay—e.g., the complexity of the investigation as well as the extent to which the defendant[s] participated in delaying the proceeding." *Qureshi v. Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012) (internal citations omitted).

### a.   <u>Length of Delay</u>

Defendants argue that courts generally find delays less than four years to not be unreasonable. *See* ECF No. 29 at 13 (citing *Khan v. Johnson*, 65 F. Supp. 3d 918, 929 (C.D. Cal. 2014) (quoting *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071–72 (N.D. Cal. 2014) ("*Islam II*") (collecting cases))). The Court has reviewed *Khan v. Johnson*, *Islam II*, as well as the cases *Islam II* collected. Nothing in these cases suggests Plaintiffs were outside of the United States while awaiting visa adjudications. *See Khan v. Johnson*, 65 F. Supp. 3d 918, 929–30 (C.D. Cal. 2014) (denying Government's motion to dismiss, reasoning, in part, seven-year delay to adjudicate I-485 petition[11] without giving any indication that hold was not indefinite for plaintiff living in United States); *Islam II*, 32 F. Supp. at 1071–72 (holding nearly six-year delay to adjudicate plaintiff's I-485 petition unreasonable without indicating if or when plaintiff's petition would be adjudicated for plaintiff in United States); *Islam v. Heinauer*, No. C-10-04222-JSW, 2011 WL 206661, *6 (N.D. Cal. May 25, 2011) ("*Islam I*") (holding three-year delay in adjudicating I-485 application for plaintiff in United States is not yet unreasonable, but noting it could "foresee a point at which the delay in ruling on [plaintiff's] I-485 Application would be unreasonable."); *Dosouqi v. Heinauer*, No. C-12-3946-PJH, 2013 WL 664150, *2 (N.D. Cal. Feb. 22, 2013) (holding three-and-a-half-year delay in adjudicating I-485 application not unreasonable, specifically reasoning *Dosouqi* plaintiff was not "separated from his wife and family as a result of [the Government's delay]" as in *Qureshi*); *Khan v. Scharfen*, No. 08-1398 SC, 2009 WL 941574, at *4, *8–9 (one-year delay after

---

[11] An I-485 petition concerns a process used by persons who are applying for lawful permanent resident status or adjustment of status from within the United States.

reopening case was not unreasonable for plaintiff not subject to removal as asylee); *Sagier v. USCIS*, No. 3:11-cv-05537-JSC, *13 (N.D. Cal. May 3, 2012) (concluding four-year delay in adjudicating I-485 petition was not yet unreasonable where defendants were "actively investigating and applying exemptions . . . especially given that [plaintiff] is not under a threat of deportation and is able to work and travel . . . ."); *Mugomoke*, No. 2:10-cv-02166-KJM-DAD, 2012 WL 113800, at *8–9 (holding Government failed to show seven-year delay was not unreasonable where Government failed to give any indication they might adjudicate I-485 petition for asylee living in United States); *Ahrary v. Curda*, No. 2:11-cv-02992-GEB-EFB, 2012 WL 1641411, *1, *4 (E.D. Cal. May 9, 2012) (holding Government failed to show eleven-year delay was not unreasonable despite citing examples of other exemptions granted since 2006, it provided no indication as to when plaintiff might be granted exemption, if at all); *Tewolde v. Wiles*, No. C-11-1077-JLR, 2012 WL 750542, *1, *9 (W.D. Wash. Mar. 7, 2012) (denying defendants' summary judgment motion involving nearly nine-year delay in adjudicating I-485 petition for asylee); *see also Hassane v. Holder*, No. C10-314Z, 2010 WL 2425993, *4–5 (W.D. Wash. June 11, 2010) (finding 22-month delay to adjudicate I-485 petition for asylee not unreasonable).

As noted in its January 7, 2020 preliminary injunction order, the Court could not find any case law showing that family separation could be considered in the "rule of reason" factor for unreasonable delay—rather, it appears to be a factor in the "human health and welfare" and "prejudice" prongs of the *TRAC* analysis. *See* ECF No. 44 at 18 (citing *Qureshi*, No. C-11-05814-YGR, 2012 WL 2503828, *3 ("Defendants do not dispute that Plaintiff suffers emotionally and financially from being separated from his family and that the benefits of permanent residence and eventual citizenship are also delayed . . . significant health and welfare implications exist here for Plaintiff and his family"); *Doe v. Risch*, 398 F. Supp. 3d 647, 657–58 (N.D. Cal. 2019) (holding "health and human welfare" and "interests prejudiced" *TRAC* factors tip in plaintiffs' favor where family separation caused plaintiffs to suffer extreme anxiety and depression). *But see Dosouqi*, No. C-12-3946-PJH, 2013 WL 664150, at *2 (reasoning, without specifying *TRAC* factor, "[t]he key difference between those cases [where five-year delay was found

unreasonable and reasonable] was that, in *Qureshi*, the plaintiff was separated from his wife and family as a result of USCIS' delay, whereas there was no such harm in *Beyene*.")).

This time, Defendants cite *Shihuan Cheng v. Baran*, where the court granted the defendants' motion to dismiss, holding that a one-and-a-half-year delay to adjudicate an I-526 investor petition did not constitute unreasonable delay. No. CV 17-2001-RSWL-KSX, 2017 WL 3326451, at *6 (C.D. Cal. Aug. 3, 2017). Nothing in *Shihuan Cheng* remotely suggests the same harsh circumstances that Plaintiffs here are alleged to be enduring. *See generally id. Shihuan Cheng* is irrelevant.

Again, this Court is not entirely convinced that the four-year guidepost suggested by these cases involving I-485 petitions or I-526 investor visas (where plaintiffs were likely in the United States and not facing family separation) is a direct comparison to what is happening in this case, in which Plaintiffs have been waiting an average of 563 days for waiver adjudications, whose families are enduring separation, and whose relatives are living under the escalating threat of war. *See* ECF No. 1 ¶ 129; ECF No. 42 at 7.

"[L]ength of delay alone is not dispositive." *Mugomoke v. Curda*, No. 2:10-cv-02166-KJM-DAD, 2012 WL 113800, at *8; *Najafi v. Pompeo*, No. 4:19-cv-05782-KAW, 2019 WL 6612222, at *6. Therefore, the Court will next examine the source of the delay. *See Qureshi*, No. C-11-05814-YGR, 2012 WL 2503828, at *4.

**b.** **Source of Delay**

Courts "look[] to the source of the delay—e.g., the complexity of the investigation as well as the extent to which the defendant[s] participated in delaying the proceeding." *Qureshi*, No. C-11-05814-YGR, 2012 WL 2503828, at *4 (internal citations omitted). Plaintiffs argue that waiver requests can be completed within one business day, even before defendants' new automated vetting was implemented. *See* ECF No. 42 at 11–12.[12]

_____

[12] The Court noted in its order denying Plaintiffs' preliminary injunction motion that the exhibits

*Najafi* and *Darchini* are recent cases involving PP 9645. In *Najafi*, the Northern District noted the Supreme Court's acceptance of PP 9645's "extensive findings describing how deficiencies in the practices of select foreign governments . . . deprive the Government of 'sufficient information to assess the risks those countries' nationals pose to the United States.'" *Najafi*, No. 4:19-cv-05782, 2019 WL 6612222, at *6 (quoting *Trump v. Hawaii*, 138 S. Ct. at 2408). In *Darchini*, the Central District was "persuaded by the Government's argument that this vetting process 'is more difficult and time consuming for Iranian nationals because, the Presidential Proclamation explains, Iran does not adequately provide public-safety and terrorism-related information . . . . 'any delay alleged is not unreasonable under the circumstances and certainly nowhere close to what would amount to an excessive delay under even domestic immigration processing standards.'" *Darchini*, No. 8:19-cv-01417, 2019 WL 6841991, at *8 (internal citations omitted).[13]

Given the facts at this preliminary stage, "the extent to which the defendant[s] participated in delaying the proceeding" is unknown. *See Qureshi*, No. C-11-05814-YGR, 2012 WL 2503828, at *4 (internal citations omitted). To the extent Defendants may suggest that Plaintiffs contributed to the

_____

Plaintiffs submitted did not conclusively support the proposition that Defendants can complete waiver considerations in "one business day" in this case. *See* ECF No. 44 at 19. At this stage, however, the Court need not weigh the credibility of the parties' evidence.

[13] Within the I-485 petition context used by persons who are applying for lawful permanent resident status from within the United States, other courts analyzing whether the Government has unreasonably delayed plaintiffs' adjudications have rejected the Government's mere invocation of national security without facts specifying why plaintiffs would pose a risk to national security, or without identifying if or when plaintiffs' petitions would be adjudicated. *See, e.g., Qureshi*, No. C-11-05814-YGR, 2012 WL 2503828, at *6 ("[M]ere invocation of national security is not enough to render agency delay reasonable per se.") (quoting *Singh v. Still*, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2007)); *Doe v. Risch*, 398 F. Supp. 3d 647, 656 (N.D. Cal. 2019) (same); *Johnson*, 65 F. Supp. 3d at 929 ("[a]lthough the government's time-consuming exemption process 'requires careful deliberation' and the 'coordination of numerous agencies,' there comes a point where the seemingly indefinite delay of an I-485 petition becomes untethered from any discernable 'rule of reason.'"); *Islam II*, 32 F. Supp. 3d at 1072 (same); *Mugomoke*, No. 2:10-cv-02166-KJM-DAD, 2012 WL 113800, at *7 (rejecting defendants' argument that exemption procedure requires significant interagency consultation where defendants failed to explain when plaintiff could anticipate adjudication of application after five-year delay or how those concerns would be undermined by expediting plaintiff's I-485 application).

source of the delay, this argument would not be well received. *See* ECF No. 29 at 21 (citing Defs.' Resps. to Pls.' Interrogs. ("At this time, Defendants are not using the enhanced automated screening and vetting process implemented in July 2019 to assist the consular officer in the adjudication of this applicant's visa and waiver applications because the consular officer is awaiting information from the primary visa applicant.")).

Defendants repeatedly contend that because certain Plaintiffs have been granted visas, the remaining Plaintiffs lack cognizable claims under the APA, the Mandamus and Venue Act (18 U.S.C. § 1361), and the Fifth Amendment. *See* ECF No. 29 at 5, 13, 21. That certain Plaintiffs have been granted waivers and received visas is one, but not the only, consideration the Court may take in determining whether Defendants have unreasonably delayed in adjudicating the remaining Plaintiffs' waivers. *See Ahrary*, No. 2:11-cv-02992-GEB-EFB, 2012 WL 1641411, at *4–5 ("While the government does cite a number of examples of exemptions granted in I-485 petitions since 2006 [for plaintiff who assisted Tier III undesignated terrorist organization and endured eleven-year delay], these prior exemptions provide no indication as to when [*plaintiff*] might be granted an exemption, if at all," and "The Court has already found the issuance of potential exemptions to not be a rule of reason, and the 'mere invocation of national security [by Defendants] is not enough to render agency delay reasonable per se.'") (internal citations omitted).

Taking into consideration the allegations concerning current length of delay, the source of the delay, and the unknown extent to which the defendants participated in delaying the adjudications, it is premature for this Court to make a finding at the motion to dismiss stage. *See Moghaddam*, No. 19-668-CKK, 2020 WL 364839, at *7–8 (citing *M.J.L.*, No. A-19-CV-00477-LY, 2019 WL 6039971, at *6).

### 2. <u>Timetable</u>

There is no congressional timetable. *See* ECF No. 29 at 17. Accordingly, this factor is neutral. *See Qureshi*, No. C-11-05814-YGR, 2012 WL 2503828, at *6 (concluding "the second factor does not weigh strongly in favor of either party" because of the lack of mandatory timetable); *see also Ahrary*,

No. 2:11-cv-02992-GEB-EFB, 2012 WL 1641411, at *4 (finding second factor irrelevant because "there is no congressional timetable for [the applicable inquiry]"); *Mugomoke*, No. 2:10-cv-02166-KJM-DAD, 2012 WL 113800, at *7 ("The second factor can be dispensed with readily, as there is no congressional timetable for I-485 adjudications.").

### 3. <u>Human Health and Welfare & Interests Prejudiced</u>

Courts often analyze the health and human welfare and interests prejudiced by the delay together. *See Johnson*, 65 F. Supp. 3d at 930–31 (citing *Islam II*, 32 F. Supp. 3d at 1073). Plaintiffs assert they "suffer extraordinary hardship of family separation, exacerbated by the prospect of war." ECF No. 42 at 7. Plaintiffs further allege extraordinary expenses to visit their loved ones. *See, e.g.*, ECF No. 1 ¶¶ 125–127, 163.

Plaintiffs have also alleged in detail the escalating threat of war between the United States and Iran. *See id.* ¶ 129 (noting United States's withdrawal from nuclear deal; Iran's pledge to increase uranium production; deployment of troops and "military hardware" to Middle East; oil tanker attacks; drone strikes; heightened sanctions; President Trump's *Twitter* post stating "Iran made a very big mistake!"; and "[President Trump] approve[d] strikes 'on a handful of Iranian targets' but call[ed] them off at the last minute.").

Once again, Defendants appear to concede these *TRAC* factors as they do not assert any argument for or against them. These allegations of Plaintiffs' emotional, physical, and financial suffering, in addition to the escalating threats of war between the United States and Iran, leads the Court to find that Plaintiffs have plausibly claimed that health and human welfare are at stake.

### 4. <u>Effect of Expediting Delayed Action on Agency Activities of a Higher or Competing Priority</u>

Courts consider the effect of expediting delayed action on agency activities of a higher or competing priority. *TRAC*, 750 F.2d at 80. The *Darchini* court was persuaded by the defendants' argument that the "effect of expediting delayed action on agency activities of a higher or competing

priority" counseled against an injunction because of the thousands of pending waiver applications and sensitive national security and public safety determinations to make. *See Darchini*, No. 8:19-cv-01417-JVS-DFM, 2019 WL 6841991, at *5; *see also Yavari*, No. 2:19-cv-2524-SVW-JC, 2019 WL 6720995, at *8 ("national security concerns constitute the stated purpose for the proclamation, and given that this purpose has been expressly approved by the Supreme Court, we must weigh this factor decisively in favor of Defendants.") (citing *Trump*, 138 S. Ct. at 2420). *But see Doe v. Risch*, 398 F. Supp. 3d at 658 (rejecting defendants' argument that "it would be unfair for [plaintiff's security check for derivative asylum petition] to be prioritized at the expense of others ahead of [him] in the queue," reasoning defendants "do not establish that there is a queue, however, let alone [plaintiff's] place therein," and noting absence of evidence of number of petitions pending longer than plaintiff's).

Here, Plaintiffs assert there is no queue to support Defendants' argument that Plaintiffs are seeking priority waiver adjudications over the thousands of over waiver applicants in line. *See* ECF No. 29 at 14; ECF No. 42 at 23–24. Defendants appear to argue that the lack of any queue "has no bearing on whether [Plaintiffs'] waiver adjudications have been unreasonably delayed or performed according to some invalid process." ECF No. 45 at 6. Defendants clarify that when they argued there were "thousands of other applicants in line" for waiver adjudication, "Defendants were employing a figure of speech and did not, of course, mean that every waiver applicant had been assigned one specific number in line and that Defendants were proceeding number by number, as if at a deli counter." ECF No. 45 at 6–7.

It is premature for this Court to make a finding on this factor at this stage. Plaintiffs have at least stated a plausible claim. Additional discovery may further illuminate the Court's analysis as to this *TRAC* factor.[14]

---

[14] At a certain point, Defendants cannot expect to keep Plaintiffs in the dark about when their applications will be adjudicated. *See Qureshi*, No. C-11-05814-YGR, 2012 WL 2503828, at *5.

### 5.    Impropriety

Plaintiffs have not alleged impropriety at this juncture. *See generally* ECF No. 42. Given the "court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" this factor is neutral. *See TRAC*, 750 F.2d at 80; *see also Doe v. Risch*, 398 F. Supp. 3d at 658–59.

Considering the *TRAC* factors together at the motion to dismiss stage, the Court finds that Plaintiffs have stated a plausible claim that Defendants have unreasonably delayed their waiver adjudications. Defendants' motion to dismiss is denied.

### F.    APA Claim Under § 706(2)(A)&(D)

PP 9645 states that "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited if such foreign nationals demonstrate that waivers would be appropriate . . . ." PP 9645 § 3(c). Plaintiffs argue that Defendants' standards, policies, and procedures "designating the authority and discretion to approve case-by-case waivers to non-consular officers, including consular managers, visa chiefs, consular section chiefs, consular management, the Visa Office, and even independent contractors with the firm Quality Support, Inc." are arbitrary and capricious in violation of § 706(2)(A) and (D) of the APA. *See* ECF No. 1 ¶¶ 1, 8, 10–12; *see also* ECF No. 42 at 11.

Defendants argue that PP 9645 does not define "consular officer," nor does it require that the role only includes rank-and-file officers, and does not prohibit oversight or assistance from experienced consular managers and supervisors. *See* ECF No. 29 at 19. Defendants add that PP 9645 "contemplates this larger agency support and involvement, in that it provides for the Secretary of State and the Secretary of Homeland Security to promulgate 'standards, policies, and procedures for: . . . determining whether the entry of a foreign national would not pose a threat to the national security or public safety of the United States." *Id.* (internal citation omitted).

Plaintiffs argue that "Defendants' usurpation of consular officer authority through the designation of nonconsular officers to adjudicate PP 9645 waivers" is unlawful. ECF No. 42 at 25. While PP 9645 does not define "consular officer," the Immigration and Nationality Act provides that the term "'consular officer' means any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this chapter, for the purpose of issuing immigrant or nonimmigrant visas . . . ." 8 U.S.C. § 1101(a)(9).[15]

Plaintiffs contend that Defendants also designate the "authority and discretion to approve case-by-case waivers to . . . nonemployees of the Department of State ("DOS") such as Quality Support, Inc. ("QSI") contractors." *See* ECF No. 1 ¶¶ 2, 93; ECF No. 42 at 7, 16. Defendants' do not address this in their motion to dismiss filings. *See generally* ECF Nos. 29, 45. Nor do Defendants suggest that any of the individuals or entities allegedly involved in PP 9645 waiver adjudication who are not obviously consular officers are appropriately classified as the "Commissioner's designee."[16] The Court need not manufacture arguments for a party making a motion to dismiss under Rule 12(b)(6).

Read in conjunction with PP 9645's language on whom has the discretion to adjudicate waivers, as well as the INA's definition of "consular officer," Plaintiffs have stated a plausible claim that Defendants are improperly designating the authority to grant case-by-case waivers to individuals or entities not envisioned by PP 9645. Accordingly, Defendants' motion to dismiss is denied.

//

## G. Mandamus Claim

28 U.S.C. § 1361 confers original jurisdiction to a district court over "any action in the nature of

---

[15] As the Supreme Court has previously held, PP 9645 was a lawful exercise of discretion granted by INA § 212(f), 8 U.S.C. § 1182. *See Trump v. Hawaii*, 138 S. Ct. at 2408.

[16] Plaintiffs, on the other hand, address this briefly in two footnotes. *See* ECF No. 42 at 22–23 n.16 (noting phrase "in the judgment of the Secretary of State *or his designee*" in President Reagan's Proclamation imposing restrictions on Cuban government officials from entering the United States) (emphasis in original); *id.* at n.17 (noting phrase "as determined by the Secretary of State *or his designee*" in President Trump's Proclamation 9945) (emphasis in original).

mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The court may issue a writ of mandamus if "(1) [plaintiffs'] claim is clear and certain"; (2) the official's duty is nondiscretionary, "ministerial and so plainly prescribed as to be free from doubt"; and (3) "no other adequate remedy is available." *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir. 1986).

However, the Court finds that it has jurisdiction over and Plaintiffs have stated viable claims under the APA, which have the potential to give Plaintiffs an adequate remedy. Thus, the Court need not reach the question of whether it has jurisdiction under the Mandamus Act. *See Moghaddam*, No. 19-668-CKK, 2020 WL 364839, at *1.

**H.    Procedural Due Process**

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process "is a flexible concept that varies with the particular situation." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Due process protections extend only to deprivations of protected interests. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). An individual's property is a fundamental example of a protected interest. *See Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).

A court must first determine whether plaintiffs were deprived of a liberty interest at all. *See Kerry v. Din*, 575 U.S. 86, 135 S. Ct. 2128, 2132 (2015). Once a court has concluded a protected interest is at stake, it must apply the three-part balancing test under *Matthews v Eldridge*, 424 U.S. 319, 335 (1979), to determine whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation. *See Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (citing *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015)). The *Matthews* factors are: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Id.* "By weighing these concerns, courts can determine

whether a [government actor] has met the fundamental requirement of due process—the opportunity to be heard at a meaningful time and in a meaningful manner." *Yagman*, 852 F.3d at 864 (citing *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003)).

Defendants argue that "Plaintiffs fail to state a procedural due process claim as a matter of law because their allegations do not support an inference that any protected liberty or property interest is implicated or that there is some additional process they are entitled to but have been denied." ECF No. 29 at 20. Plaintiffs argue "the waiver process Defendants have implemented is inherently arbitrary and has deprived Plaintiffs of even the most minimal process that attaches to the statutory benefits conferred to them by Congress." ECF No. 42 at 24 (quoting ECF No. 1 ¶ 161). Plaintiffs add "Defendants have deprived Plaintiffs of the opportunity to show that they meet the eligibility criteria for visa categories for which they or their family members are eligible by statute," and "[i]n doing so, Defendants have already deprived, and continue to provide[17] Plaintiffs, and all those similarly situated, of protected liberty and property interests without due process of law." *Id.*

Plaintiffs' allegations are too conclusory to state a plausible claim. Plaintiffs fail to specify the liberty interest at stake. Plaintiffs contend they have alleged "violations of enumerated and unenumerated rights recognized in Fifth Amendment jurisprudence, including infringement of fundamental rights to property, to life, to family integrity and security, and to freedom from discrimination with respect to their fundamental rights." ECF No. 42 at 25 (citing ECF No. 1 ¶¶ 155–163). Plaintiffs fail to address Defendants' arguments concerning whether non-citizen and non-LPR Plaintiffs can raise procedural due process claims under the Fifth Amendment. *See* ECF No. 29 at 20. Plaintiffs additionally fail to provide any analysis of the *Matthews* test.

In essence, Plaintiffs' contentions appear to concern substantive due process rights. Here,

---

[17] It is unclear whether Plaintiffs meant "deprive" instead of "provide."

however, Plaintiffs' have not squarely alleged substantive due process claims. Accordingly, Defendants' motion to dismiss is granted. Plaintiffs are given leave to amend their procedural due process claim to specify the protected liberty interest and/or add appropriate substantive due process claims consistent with their obligations under Federal Rule of Civil Procedure 11. *See Cook*, 911 F.2d at 247 (holding court may afford plaintiff with leave to amend if pleadings can be cured by allegation of additional facts).

## I.    Equal Protection

There is an equal protection "guarantee implicit in the Fifth Amendment's Due Process Clause." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1 (2017). The Fifth Amendment "forbid[s] discrimination that is so unjustifiable as to be violative of due process." *Id.* (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2).

To prevail on an Equal Protection claim, a plaintiff must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against her based upon membership in a protected class. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (internal quotation omitted), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601–02 (2008).

Defendants argue that Plaintiffs have failed to establish that they are members of an identifiable class, that they were treated differently from others similarly situated, or that there is no rational basis for any differential treatment. *See* ECF No. 29 at 21–22 (citing *Trump v. Hawaii*, 138 S. Ct. at 2408, 2421–23).[18] Defendants contend that the Government has advanced a sufficient national security

[18] The Court notes that *Trump v. Hawaii*, 138 S. Ct. at 2420–23, involved a First Amendment Establishment Clause challenge, whereas here, Plaintiffs raise challenges under the Fifth Amendment. The parties' briefings do not address whether the rational basis test applied in *Trump v. Hawaii* is applicable in this context involving the Fifth Amendment. The Court need not reach this question because Plaintiffs have failed to assert a plausible claim for Equal Protection under the Fifth

justification for PP 9645 to survive rational basis review. *See id.* Plaintiffs argue they are members of a suspect class: those who were interviewed *before* the July 2019 implementation of the enhanced automated screening system. *See* ECF No. 42 at 26 (citing ECF No. 1 ¶ 169). Plaintiffs further contend Defendants have a longstanding history of discriminating against Iranian nationals. *See id.*

First, Plaintiffs offer no legal authority supporting their assertion that those Plaintiffs interviewed before the Defendants' July 2019 implementation of the enhanced automated screening affords them status as members of a suspect class. To the extent Plaintiffs contend they suffer discrimination because they are Iranian nationals, Plaintiffs fail to address how this differentiates them from Iranian nationals who were interviewed after the Defendants' July 2019 implementation of the enhanced automated screening. Therefore, Plaintiffs have failed to establish a plausible claim. Defendants' motion to dismiss Plaintiffs' Fifth Amendment Equal Protection claim is granted with leave to amend.

## V. <u>CONCLUSION</u>

For the reasons stated above, the Court:

1. **GRANTS IN PART and DENIES IN PART** Defendants' motion to dismiss with leave to amend.

2. Plaintiffs have **30 days** from the date of this order to file an amended complaint or to file a notice of their intent not to amend the complaint. Defendants shall have **30 days** from the date of the amended complaint is served to file an answer or dispositive pleading.

3. The Clerk of Court is directed to file this order on the public docket.

IT IS SO ORDERED.

Dated:   **January 30, 2020**          **/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE

_____

Amendment.